IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| ROBERT TERRY and | * | |
| RICK SHADDEN, | * | |
| | * | |
| Plaintiffs, | * | |
| vs. | * | No. 4:13-cv-00408-SWW |
| | * | |
| | * | |
| YELL COUNTY, ARKANSAS, | * | |
| | * | |
| Defendant. | * | |

## OPINION AND ORDER

Plaintiffs Robert Terry and Rick Shadden bring this action against their former employer, defendant Yell County, Arkansas, claiming defendant willfully did not pay them their overtime wages under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* The matter is before the Court on motion of plaintiffs for summary judgment [doc.#14]. Defendant has responded in opposition to plaintiffs' motion and plaintiffs have replied to defendant's response. For the reasons that follow, the Court grants in part and denies in part plaintiffs' motion for summary judgment.

I.

Plaintiffs are former sheriff's deputies for the Yell County, Arkansas Sheriff's Department. Both plaintiffs worked for defendant at locations throughout Yell County serving defendant as law enforcement officers in a K-9 (canine) unit position. Rick Shadden was an employee of defendant in that position from approximately July 1, 2009, until his employment ended on May 1, 2011. Robert Terry was an employee of defendant

in that position from August 12, 2011, until his employment ended on May 9, 2013.

Plaintiffs state by way of declarations that they were paid by defendant by the hour and that the vast majority of their time working for defendant was spent on patrol with the canine units, cleaning and training the dogs, and cleaning the vehicles.  They state they were made to work far in excess of 40 hours per week, sometimes even as many as 80 or more hours in a week, but that they were generally paid for no more than 40 hours each week.

Plaintiffs state the defendant unsuccessfully attempted to credit them with "comp" time for some of the time that was overtime and time spent with the canine units.  They state defendant did not keep accurate records of the time they worked overtime and that defendant had knowledge of the facts and circumstances and imposed policies that caused them to work undocumented hours.  Plaintiffs state they were explicitly directed to under-report their hours worked for defendant so that defendant would pay less in overtime.

Plaintiffs state that in the times they went over the number of hours that had been budgeted by defendant, they were questioned about it and essentially told, "You have X amount of hours you can be paid, and this is what we've got to do."  They state their supervisor responded to their complaints about the hours they had to work without pay by telling them that defendant had a policy that they did not want much overtime on paperwork and that plaintiffs had to "do the work that you have to do in order to get the job done."  Plaintiffs state that a supervisor named "Kevin" gave them a similar response, stating, "we don't have overtime ... overtime just does not exist."  They state that

supervisors visited the locations where they worked and knew of the hours they were working.

In contrast, Sheriff Bill Gilkey, who defendant states supervised both of the plaintiffs for their entire tenure for the Yell County Sheriff's Department, states in an affidavit that plaintiffs' accusations concerning their claims of being denied overtime pay are untrue and unfounded and that it is his belief based upon review of the records and having been the Sheriff during the entire time of plaintiffs' employment that they are not owed any overtime and that they were properly paid for all time worked. He states that each of his employees has a timecard that is submitted on two-week intervals, which is how deputies are paid, and that during the course of discovery in this case, he supplied all of his department's timecards as requested by the plaintiffs. Sheriff Gilkey states that each timecard reflects the total hours for each pay period, that there is a specific blank space for overtime to be inserted, and that each timecard is initialed as approved by Sheriff Gilkey's administrative staff. He states he personally asked both plaintiffs on a monthly basis if their timecards were correct and if there were any extra hours associated with the care and operation of the canine unit for which they needed to be compensated and that the answer he received from the plaintiffs was "no."

Sheriff Gilkey states that he cannot attest to the statements of plaintiffs to the effect that the vast majority of their time was spent on patrol with the canine unit, cleaning and training the dogs, and cleaning the vehicles. He states, however, that while he agrees plaintiffs were assigned to the canine unit, he does not believe they spent any

time other than what they listed on their timecard in caring for their vehicles or animals. Defendant further states in its response to plaintiffs' interrogatories that

> [d]ue to the fact that shifts at the Yell County Sheriff's Office are not overridden with calls, there is a sufficient amount of time during each regular shift to perform training for the dog. In addition, Plaintiffs were instructed to leave their shift one-hour early each shift in order to perform normal dog care. An hour was sufficient time to perform normal dog care. In the event that there were overages, Plaintiffs were to properly document their timecard in order to be paid for this time.

II.

Plaintiffs move for summary judgment on grounds that (1) plaintiffs are not exempt employees under the FLSA; (2) plaintiffs are owed overtime wages as provided for under the FLSA; (3) defendant willfully violated its statutory obligations for a period in excess of 3 years; and (4) plaintiffs are entitled to back-pay compensation and liquidated damages equal to their unpaid compensation, and attorney's fees and costs. Plaintiffs argue there are no genuine issues of material fact with respect to any of these issues and that they are entitled to summary judgment as a matter of law.[1]

A.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). To support an assertion that a fact cannot be or is genuinely

---

[1] Given that plaintiffs' motion for summary judgment is based solely on their declarations and defendant has submitted a contrary affidavit (as well as time records and responses to discovery), the Court denies plaintiffs' request to deem admitted their statement of undisputed facts.

disputed, a party must cite "to particular parts of materials in the record," or show "that the materials cited do not establish the absence or presence of a genuine dispute," or "that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (citations omitted). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id*.

B.

The FLSA generally requires employers to pay their employees at least one and one-half times their regular wage rate for hours worked in excess of 40 hours in a given week. 29 U.S.C. § 207(a)(1). "As a general matter, an employee's workday begins with the first 'principal activity' of his employment, and ends with the last such activity."

*Adair v. ConAgra Foods, Inc.*, 728 F.3d 849, 850-51 (8th Cir. 2013) (citing 29 C.F.R. § 790.6(b)). However, "'[a]ctivities performed either before or after the regular work shift ... are compensable ... if those activities are *an integral and indispensable part of the principal activities* for which covered workmen are employed and are not specifically excluded by [29 U.S.C. § 254(a)(1)].'" *Lopez v. Tyson Foods, Inc.*, 690 F.3d 869, 874 (8th Cir. 2012) (quoting *Steiner v. Mitchell,* 350 U.S. 247, 256 (1956) (emphasis added)).[2] In addition, "'any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity' under [29 U.S.C. § 254(a)].'" *Id*. (quoting *IBP, Inc. v. Alvarez,* 546 U.S. 21, 37 (2005)).

An employer who "'knows or has reason to believe'" that the employee is working overtime is obligated to compensate the employee. *Reich v. Stewart*, 121 F.3d 400, 407 (8th Cir. 1997) (quoting *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8th Cir. 1975)). In this respect,

> [a]n employee must be compensated for duties before and after scheduled hours ... if the employer knows or has reason to believe the employee is continuing to work and the duties are an integral and indispensable part of the employee's principal work activity. Thus, in order to prevail on their overtime claims, Plaintiffs [a]re required to present evidence that they worked above their scheduled hours without compensation and that the [employer] knew or should have known that they were working overtime.

*Hertz v. Woodbury County, Iowa*, 566 F.3d 775, 781 (8th Cir. 2009) (citations and

---

[2] Excluded from the workday is time spent "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which [an] employee is employed to perform," and time spent performing "activities which are preliminary to or postliminary to said principal activity or activities." *Id*. (quoting 29 U.S.C. § 254(a)).

quotation marks omitted).  "'[A]ny employer who violates the [... overtime wage] provisions of [the FLSA] *shall* be liable to the employee or employees affected in the amount of their ... unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.'"  *Lucas v. Jerusalem Cafe, LLC,* 721 F.3d 927, 939 (8th Cir. 2013) (citing 29 U.S.C. § 216(b) (emphasis added)).

1.

The Court first addresses plaintiffs' claim that they are not subject to any FLSA exemption.  Section 213(a)(1) provides that the provisions of § 207 shall not apply with respect to "any employee employed in a bona fide executive, administrative, or professional capacity...."  Defendant admits that as sheriff's deputies for defendant, plaintiffs' "actual day-to-day job duties and responsibilities were not exempt under the FLSA with respect to payment for time worked in excess of 40 hours each week."  Accordingly, plaintiffs are not subject to any FLSA exemption.  See *Fast v. Applebee's, Intern., Inc.*, 638 F.3d 872, 882 (8th Cir. 2011) (an exemption under the FLSA is an affirmative defense, and the employer bears the burden of proof to establish that an exemption applies).

2.

The Court now turns to plaintiffs' claim for unpaid overtime wages.  Plaintiff Robert Terry claims that when working an average of 30 hours to which he was not compensated per pay period, he would be owed $12,285.00.  He claims that per

defendant's time sheets and his recollection of his hours worked, the complete and accurate accounting of all the compensation to which he is entitled, when liquidated, is $24,570.00.  Plaintiff Rick Shadden claims that when working an average of 30 hours to which he was not compensated per pay period, he would be owed $8,775.00.  He claims that per defendant's time sheets and his recollections of his hours worked, the complete and accurate accounting of all the compensation to which he is owed, when liquidated, is $17,550.00.

An employee who brings suit for unpaid overtime wages under the FLSA "'has the burden of proving that he performed work for which he was not properly compensated.'" *Lopez,* 690 F.3d at 874 (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686–87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), superceded by statute on other grounds, Portal–to–Portal Act of 1947, Pub.L. No. 80–49, 61 Stat. 84).  To prevail on their FLSA claim for uncompensated overtime, plaintiffs must prove that the activity for which compensation is sought constitutes "work" under the FLSA and, as previously noted, that defendant had actual or constructive knowledge of their overtime work.  *Woodman v. City of Hazen, Arkansas*, No. 4:08CV00364 JLH, 2009 WL 2579266, *2 (E.D. Ark. Aug. 19, 2009).  The FLSA does not define when an employee is working for his or her employer but it has generally been held that "an employee's time is 'work' for the purposes of the FLSA if it is spent 'predominantly for the benefit of the employer.'"  *Reimer v. Champion Healthcare Corp.*, 258 F.3d 720, 725 (8th Cir. 2001) (quoting *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944)).  "Whether time is spent predominantly for the employer's

benefit or for the employee's is a question dependent upon all of the circumstances of the case." *Armour*, 323 U.S. at 133. See also *Skidmore v. Swift & Co.*, 323 U.S. 134, 136-38 (1944)).

Defendant does not dispute that plaintiffs' time spent on patrol with the canine units, cleaning and training the dogs, and cleaning the vehicles was compensable work time under the FLSA. But even if it had, the Court would reject such an argument as a number of courts, including courts within the Eastern District of Arkansas, have found that the time a police officer spends caring for or training his or her assigned canine constitutes compensable work time under the FLSA. See *Woodman*, 2009 WL 2579266, *2 (collecting cases); see also *Treece v. City of Little Rock, Ark.*, 923 F.Supp. 1122, 1125 (E.D. Ark. 1996) (canine police officers performed activities that were compensable under FLSA when they fed, watered, exercised, groomed, cleaned, cleaned living areas of, trained, arranged veterinary care for, and provided home medical care for, assigned police dogs during off-the-clock time).

As plaintiffs' work concerning their canine responsibilities is compensable work time under the FLSA, the key issues to be resolved are whether plaintiffs worked uncompensated overtime and whether defendant or its agents had actual or constructive knowledge that plaintiffs were working overtime. Even if plaintiffs did not initially seek overtime pay, "'[a]cceptance by an employee of payments of regular and overtime wages will not stop him from suing to recover the amount due him when he proves he actually worked longer.'" *Woodman*, 2009 WL 2579266, *3 (quoting *Robertson v. Alaska Juneau*

*Gold Mining Co.*, 157 F.2d 876, 879 (9th Cir. 1946)).  "Failing to include off-duty time spent caring for and training an assigned police canine does not preclude the employee from recovering compensation for such work." *Id*. (citing *Baker v. Stone County, Mo.*, 41 F.Supp.2d 965, 1000-01 (W.D. Mo. 1999)).  "Ultimately, a court need only inquire "'whether the circumstances were such that the employer either had knowledge of overtime hours being worked or else had the opportunity through reasonable diligence to acquire knowledge.'" *Id*. (quoting *Kautsch v. Premier Communications*, No. 06-CV-04035-NKL, 2007 WL 3376711, *2 (W.D. MO. Nov. 7, 2007)).

Here, as noted by defendant, there is a clear factual dispute as between the declarations of the plaintiffs and the affidavit of Sheriff Gilkey concerning how the defendant handled overtime hours.  Having considered also defendant's time records (the accuracy of which plaintiffs dispute) and discovery responses, the Court finds that the questions of whether plaintiffs were compensated for all their overtime work and, if not, whether the defendant had actual or constructive knowledge that plaintiffs were working overtime are factual questions that the Court is unable to resolve on this record.  See *Stewart*, 121 F.3d at 404 (the amount of time an employee works and the duties he or she performs are factual questions).[3]

---

[3] The Eighth Circuit has applied the *Mt. Clemens* burden shifting framework in FLSA cases concerning overtime wages.  *Fast*, 638 F.3d at 882 (citing *Hertz*, 566 F.3d 775).  Under this framework, it is the employer's duty to keep employment records, and as long as the employer has kept proper and accurate records, the employee may easily discharge his burden by securing the production of those records.  *Id.* at 881-82.  But where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes, "'a more difficult problem arises.'"  *Id*. at 882 (quoting *Mt. Clemens*, 328 U.S. at 687).  Penalizing the employee in

3.

Plaintiffs also argue that defendant's alleged violations of the FLSA were willful and, thus, subject to a three year rather than two year statute of limitations. See 29 U.S.C. § 255(a) (setting forth a three-year limitations period for willful FLSA violations and a two-year limitations period for all other violations). An FLSA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). This standard requires more than negligence or a good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects. *Id*. at 135.

Because the Court is unable to resolve on this record the questions of whether plaintiffs were compensated for all their overtime work and, if not, whether the defendant had actual or constructive knowledge that plaintiffs were working overtime, the question of willfulness likewise is a factual question that the Court is unable to resolve on this record.

III.

---

that situation would only encourage employers to fail to keep proper records, so the Court in *Mt. Clemens* held that "'an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Id.* (quoting *Mt. Clemens*, 328 U.S. at 687). "'The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Id*. (quoting *Mt. Clemens*, 328 U.S. at 687-88).

For the foregoing reasons, the Court grants in part and denies in part plaintiffs' motion for summary judgment [doc.#14].

IT IS SO ORDERED this 14th day of August 2014.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE